## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREN PRESCOTT, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>        v.<br><br>DOS TOROS LLC, DOS TOROS HOLDINGS LLC, DT PARENTCO, LLC, and FOUNDERS TABLE RESTAURANT GROUP, LLC,<br><br>                   Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Lauren Prescott ("Plaintiff" or "Prescott"), individually and on behalf of other similarly situated individuals, by and through her counsel, hereby files this Class Action Complaint for equitable relief and damages against Defendants Dos Toros LLC, Dos Toros Holdings LLC, DT Parentco, LLC, and Founders Table Restaurant Group, LLC (hereinafter "Dos Toros" or "Defendants"), regarding the deceptive marketing of pork and chicken products (the "Products," as further defined below) as "naturally" and "humanely" raised despite the unnatural and inhumane practices utilized in raising the pigs and chickens used in the Products. Plaintiff Prescott alleges the following based upon information, belief, and the investigation of her counsel:

## **INTRODUCTION**

1.      Dos Toros is a restaurant chain headquartered in New York, New York. Founded in 2009, the chain now includes more than 20 locations spread across the New York and Chicago metro areas and serves a menu consisting primarily of burritos, tacos, and beverages.

2.      Dos Toros sells food products containing pork and chicken (the "Products"[1]).

---

[1] The "Products" include all of Dos Toros' food products that contain pork and/or chicken ingredients.

3.      During the Class Period (as defined below), on in-store signage in Dos Toros locations, Dos Toros prominently advertised these Products as being "naturally" and "humanely" raised.

4.      Contrary to those advertisements, Dos Toros sells Products that include pork and chicken from suppliers that raise animals in unnatural and inhumane industrial facilities where animals have no access to the outdoors for their entire lives. Reasonable consumers do not perceive these methods as "natural" or "humane."

5.      By deceiving consumers about the source of its Products, Dos Toros is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take market share away from competing restaurants, thereby increasing its own sales and profits.

6.      Because Dos Toros's marketing of the Products has tended to mislead and has been materially deceptive about the true nature, quality, source, and traceability of the Products, Plaintiff Prescott brings this deceptive advertising case on behalf of herself and all others similarly situated, and seeks equitable and monetary relief.

## FACT ALLEGATIONS

7.      Plaintiff Prescott brings this suit against Dos Toros based on misrepresentations about the sourcing of its pork and chicken products from "natural" and "humane" suppliers when in fact Dos Toros sources from suppliers that use unnatural and inhumane methods.

8.      Dos Toros knows that American consumers increasingly seek out and will pay more for naturally and humanely raised pork and chicken products that meet strict animal welfare standards.

9.      To capitalize on this market of consumers, Dos Toros cultivates an image of the Products as natural and humane alternatives for consumers who wish to avoid pork and chicken products that are sourced using unnatural and inhumane animal welfare practices.

**A.      Dos Toros Has Represented That the Pigs and Chickens Used in the Products Are "Naturally and Humanely Raised" and "100% Naturally Raised."**

10.      Dos Toros has marketed the Products as "naturally and humanely raised" and "100% naturally raised." These representations have appeared on Dos Toros's in-store signage during the Class Period and included the following statements:

- "Our chicken, steak, and pork are all **naturally and humanely raised** and are 100% ANTIBIOTIC and HORMONE FREE."

- "WE PROUDLY SOURCE **100% NATURALLY RAISED** CHICKEN, STEAK & PORK."

An example of Dos Toros's in-store signage is provided below:



11.     Dos Toros's "naturally" and "humanely raised" marketing representations were designed to lead, and have led, consumers to believe that Dos Toros's suppliers raise pigs and chickens using natural and humane animal welfare practices.

**B.      Contrary to Dos Toros's Representations, Pigs and Chickens Used in the Products Are Raised in Unnatural and Inhumane Conditions.**

12.     Contrary to Dos Toros's representations, the pigs and chickens used in the Products (1) are not provided access to the outdoors; and (2) are routinely raised, fed, handled, and slaughtered in inhumane, crowded, and stressful conditions of confinement that prevent the expression of their natural behaviors.

13.     The pigs used in the Products are subjected to inhumane and unnatural conditions. Videos posted on the website of Clemens Farms (hereinafter "Clemens"), a supplier identified by Dos Toros[2] as providing "naturally raised" pork for Dos Toros's Products, reveal crowded conditions and permanent indoor confinement of the pigs.[3]



14.     Government inspectors have repeatedly documented animal cruelty and neglect at Clemens's industrial facilities.

15.     For example, following numerous documented incidents of improper and inhumane stunning, on October 23, 2018 the USDA suspended a Clemens slaughterhouse for "egregious inhumane handling" of a pig. The pig, who was improperly shot with a captive-bolt gun three times while vocalizing and fully conscious, was left bleeding from three holes in the head.

16.     These inhumane stunning incidents are part of a pattern of inhumane treatment documented by government inspectors at Clemens facilities. Other government reports show that, between 2018 and 2020, Clemens's pigs were improperly hit by employees with "hard full arm

---

[2] Dos Toros Taqueria (@dostorostaqueria), Facebook (Apr. 13, 2019), https://www.facebook.com/dostoros taqueria/videos/333739040833473/.
[3] Clemens Farms, *Our Promise*, https://www.farmpromise.com/our-promise (last visited Mar. 24, 2022).

swings," forcefully yanked and pulled by the ears, and repeatedly injured by automated gates closing on their heads.

17.     The chickens used in the Products are subjected to similarly inhumane and unnatural conditions.

18.     FreeBird, Dos Toros's chicken supplier,[4] has been cited on numerous separate occasions by government slaughterhouse inspectors when it has "lost control of its process resulting in the death of large numbers of birds" who were not properly stunned and/or slaughtered.

19.     For example, on January 24, 2018, a government inspector identified 83 birds who had suffocated on FreeBird's slaughter line.

20.     On multiple occasions in 2018 and 2019, government inspectors documented an excessive number of birds with "broken and bloody wings," including some "compound fractures" at FreeBird facilities.

21.     On April 26, 2019, an inspector observed at a Freebird facility a bird left unattended in "visible . . . intense pain," who was "struggling to breathe," "badly mutilated," and suffering from a broken wing.

22.     An inspection at a Freebird facility on December 20, 2020 revealed that a FreeBird employee had dumped live birds on top of each other, which resulted in the suffocation of approximately 180 birds.

23.     Since 2018, in at least four separate incidents, inspectors have documented birds boiled alive at FreeBird's facilities.

---

[4] *See supra* note 2.

24.     Statements posted on FreeBird's website confirm that the chickens it raises do not have access to the outdoors.

25.     Dos Toros knows that American consumers increasingly and consciously seek out, and will pay more for, animal products marketed as "naturally" and "humanely" sourced. Dos Toros capitalizes on consumers' knowledge gap regarding animal husbandry practices by misrepresenting the treatment of the pigs and chickens in its supply chain, including statements made on its in-store signage that the Products are "naturally and humanely raised" and "100% naturally raised."

26.     This reality of Dos Toros's sourcing practices is inconsistent with how reasonable consumers understand Dos Toros's representations.

**C.      Dos Toros's Representations Are Material and Misleading to Consumers.**

27.     Dos Toros's representations are false and materially misleading to consumers.

28.     Consumers care about animal welfare. Consumers are willing to pay more for products that they believe come from humanely treated animals, as consumer studies have shown.

29.     For example, a 2015 Consumer Reports survey found that consumers deem it important that food not be produced via standard factory-farm methods, with 84% of consumers responding that it was "important" or "very important" to provide better living conditions for animals raised for food.[5]

---

[5] *See Natural Food Labels* Survey, Consumer Reports National Research Center (2015), https://foodpolitics.com/wp-content/uploads/Consumer-Reports-Natural-Food-Labels-Survey-Report.pdf.

30.     According to a 2013 survey conducted by the American Humane Association, 89% of consumers were very concerned about farm animal welfare, and 74% stated that they were willing to pay more for humanely raised meat products.[6]

31.     A 2018 study published in the journal *Animals* found that the weighted average of consumers' marginal willingness to pay for products from humanely treated animals was $0.96 for one pound of chicken breast (a 48% premium).[7]

32.     Consumer surveys further show that Dos Toros's practices are inconsistent with consumer expectations for "naturally raised" and "humanely raised" products.

33.     For example, a 2008 Consumer Reports survey found that a majority of consumers believed the following about animal products marketed as "naturally raised":

- The product came from an animal who had access to the outdoors (77%);
- The product came from an animal who was treated humanely (76%).[8]

34.     Likewise, the 2015 Consumer Reports survey found that consumers connect "natural" representations on meat and poultry to animal welfare, understanding "natural" to indicate that animals are allowed to express their natural behaviors by going outside.[9]

35.     A 2016 Consumer Reports survey found that a majority of consumers believe the following about animal products marketed as "humanely raised":

- the animals have adequate living space (77%);
- the animals go outdoors (68%); and
- the animals are slaughtered humanely (71%).[10]

---

[6] *Humane Heartland Farm Animal Welfare Survey (2013)*, Am. Humane Ass'n, https://www.americanhumane.org/app/uploads/2013/08/humane-heartland-farm-animals-survey-results.pdf.

[7] C. Victor Spain et al., *Are They Buying It? United States Consumers' Changing Attitudes Toward More Humanely Raised Meat, Eggs, and Dairy*, 8 Animals 128 (2018).

[8] *Food-Labeling Poll 2008*, Consumer Reports National Research Center, http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/02/foodpoll2008.pdf.

[9] *See supra* note 5.

[10] Consumer Reports National Research Center, *Food Labels Survey: 2016 Nationally-Representative Phone Survey* at 2 (2016), https://www.ftc.gov/system/files/documents/public_events/975753/cr_intro_and_2016_food_survey.pdf.

COMPLAINT

36.     Given that the pigs and chickens used for Dos Toros's Products do not have outdoor access and are raised and slaughtered inhumanely, Dos Toros's representations about the pigs and chickens being "naturally" and "humanely" raised have been misleading consumers.

**D.     Dos Toros Has Knowledge of Its Supply Chain and Is Aware That Its Representations Have Been False.**

37.     Dos Toros knows that it has marketed the Products as "naturally" and "humanely raised."

38.     Dos Toros also knows how the pork and chicken used in its Products are sourced, as well as the animal welfare practices utilized by its suppliers.

39.     Consumers frequently rely on food companies, their reputations, and the information provided in their advertising in making purchasing decisions.

40.     Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of the ingredients in the Products.

41.     Reasonable consumers must, and do, rely on Dos Toros to honestly report what the Products contain and how they are made.

42.     Reasonable consumers have been misled and deceived by Dos Toros to believe that they are purchasing products made from animals that consumers would consider naturally and humanely raised.

43.     Dos Toros made its false, misleading, and deceptive representations, and omitted the information that would counter them, knowing that consumers would rely upon the representations in purchasing the Products.

44.     In making its false, misleading, and deceptive "naturally" and "humanely raised" representations at issue, Dos Toros intended for consumers to purchase the Products when consumers might otherwise purchase competing products.

45.     In making its false, misleading, and deceptive "naturally" and "humanely raised" representations, Dos Toros also knew and intended that consumers would pay more for animal products that were marketed as "naturally" and "humanely" raised, furthering Dos Toros's private interest of increasing sales of its Products and decreasing the sales of products that are truthfully marketed by its competitors.

46.     Dos Toros has profited enormously from consumers in New York, New Jersey, and Illinois as a result of its falsely marketed Products and its carefully orchestrated image.

47.     Dos Toros deceived and/or was likely to deceive the public by representing the Products as containing pork and chicken that was raised "naturally" and "humanely."

48.     Consumers cannot discover the true nature of the Products by reading Dos Toros's marketing representations. Signage at the point of sale and on Dos Toros's website (for any consumer who investigates further) did not provide any disclaimer or qualifying language for the "naturally" and "humanely raised" representations.

49.     Discovery of the true nature of the Products requires knowledge that is not available to the average reasonable consumer. Consumers have no readily available way of knowing that the Products are sourced from animals who are confined in tight living conditions, not provided access to the outdoors, and inhumanely treated by their caretakers.

50.     The supply chain and production process Dos Toros uses for the Products is known to Dos Toros and its suppliers but has not been disclosed to Plaintiff Prescott or other consumers.

51.     To this day, Dos Toros continues to conceal and suppress the true nature, identity,

source, and method of production of the pork and chicken used in its Products, and to capitalize on the representations it has made regarding "naturally" and "humanely" raised animals.

52.     Dos Toros's concealment tolls the applicable statute of limitations.

53.     Upon information and belief, Dos Toros has failed to remedy the problems with the Products and or the false representations that the pork and chicken used in the Products comes from "naturally" and "humanely" raised animals, thus causing future harm to consumers.

54.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, without curing the representations of "naturally and humanely raised" and "100% naturally raised" animals.

55.     Dos Toros has failed to provide adequate relief to purchasers as of the filing of this Complaint.

56.     Dos Toros's representations have conveyed a series of express and implied claims and/or omissions that it knows are material to the reasonable consumer in making purchasing decisions, and that Dos Toros intended for consumers to rely upon when choosing to purchase the Products.

57.     Had Dos Toros not made the false, misleading, and deceptive representations, Plaintiff Prescott and the Class members would not have been willing to pay the same amount for the Products they purchased and/or would not have been willing to purchase the Products at all, or to purchase as many of the Products.

58.     Upon information and belief, Dos Toros has profited enormously from the falsely and deceptively marketed Products.

## JURISDICTION AND VENUE

59.     This Court has personal jurisdiction over the parties in this case.

60.     Defendant Dos Toros LLC is a New York limited-liability company with a principal place of business in New York, New York.

61.     Defendant Dos Toros Holdings LLC is a New York limited-liability company with a principal place of business in New York, New York.

62.     Defendant DT Parentco, LLC is a Delaware limited-liability company that is registered as a New York foreign limited-liability company. Defendant DT Parentco, LLC is based in Westchester County, New York.

63.     Defendant Founders Table Restaurant Group, LLC is a Delaware limited-liability company with a principal place of business in New York, New York.

64.     Defendants regularly conduct and transact business in New York, purposefully avail themselves of the laws of New York, market the Products to consumers in New York, and sell the Products at 18 New York locations. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Products and sales of the Products at issue, occurred within this District.

65.     Plaintiff Prescott is a citizen of New York and consents to this Court's jurisdiction.

66.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal courts in any class action in which the proposed plaintiff class comprises at least 100 members, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff Prescott alleges that the total claims of individual members of the proposed Class (as defined herein) exceed $5,000,000 in the aggregate, exclusive of interest and costs.

67.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District.

## PARTIES

68.     Plaintiff Lauren Prescott is an individual consumer who is a currently a citizen of New York County, New York.

69.     During the class period, Plaintiff Prescott purchased burrito bowls, nachos, and tacos containing pork and chicken from the Dos Toros restaurants located at 101 Maiden Lane, New York, NY 10038 and 64 Court Street, Brooklyn, NY 11202 on an approximately bi-weekly basis through 2018 and 2019. Plaintiff Prescott was a resident of New York County at the time of her purchases.

70.     Plaintiff Prescott, when she entered the Dos Toros restaurants, saw and believed the in-store signage representing that the pork and chicken in the Products were "naturally and humanely raised" and "100% naturally raised." These representations were material to Plaintiff Prescott and encouraged her to make her purchases. Plaintiff Prescott relied upon these representations, which as a consumer she had no reason to doubt.

71.     Plaintiff Prescott would not have purchased the Products, or would not have purchased them on the same terms, if she had known that, contrary to Dos Toros's representations, the Products included pork and chicken sourced from suppliers that raise animals in unnatural and inhumane industrial facilities where animals have no access to the outdoors. Having encountered, and believed, Dos Toros's representations that all of the Products were "naturally and humanely raised" and "100% naturally raised," Plaintiff Prescott neither expected nor anticipated the Products she purchased would contain pork or chicken from suppliers that raise animals in

unnatural and inhumane industrial facilities where animals have no access to the outdoors, are mistreated, and have no opportunity to exhibit natural behaviors.

72.     Upon information and belief, Defendants maintain their U.S. headquarters in New York and are responsible for the sale and marketing of the Products in New York, New Jersey, and Illinois.[11]

73.     At all times mentioned herein, Defendants were and are engaged in commercial transactions in New York, New Jersey, and Illinois.[12]

## CLASS ALLEGATIONS

74.     Plaintiff Prescott brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals nationwide (the "Class"), defined as follows:

> All consumers who purchased the Products within the United States during the statute of limitations period (the "Class Period") and until the date of class certification.

75.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased Dos Toros's Products (as defined herein) in New York during the Class Period (the "New York Subclass").

76.     Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

77.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions of law and fact

---

[11] *DOS TOROS LLC*, OpenCorporates, https://opencorporates.com/companies/us_ny/3762522 (last visited Mar. 24, 2022).
[12] *Locations*, Dos Toros, https://www.dostoros.com/locations (last visited Mar. 24, 2022).

include, without limitation:

    (a)     Whether Defendants are responsible for the advertising at issue;

    (b)     Whether the advertising of the Products was unfair, false, deceptive, fraudulent and/or unlawful;

    (c)     Whether Dos Toros breached a warranty created through the marketing of its Products; and

    (d)     Whether Dos Toros's conduct as set forth above injured Plaintiff Prescott and Class members.

78.    Plaintiff Prescott's claims are typical of the claims of the Class in that she was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased the Products, and suffered a loss as a result of that those purchases.

79.    The precise number of the Class members and their identities are unknown to Plaintiff Prescott at this time but may be determined through discovery.

80.    Plaintiff Prescott is an adequate representative of the Class and New York Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions involving false advertising, and she intends to prosecute this action vigorously.

81.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy and avoids the potential for inconsistent or contradictory judgments. The substantive claims of Plaintiff Prescott and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this

class action.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action lawsuit will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Prescott's and the Class members' claims together is manageable. Unless the Class is certified, Defendants will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

83.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

84.     The prerequisites to maintaining a class action for equitable relief are met: By representing that the pork and chicken Products sold by Dos Toros are made from animals "naturally and humanely raised" and "100% naturally raised," despite Dos Toros's pork and chicken coming from suppliers that raise animals in unnatural and inhumane industrial facilities where animals have no access to the outdoors, Dos Toros has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

85.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Dos Toros. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

86.     Dos Toros's conduct is generally applicable to the Class as a whole, and Plaintiff Prescott seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

87.     Plaintiff Prescott knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I

**Violations of the New York General Business Law § 349**
**(On Behalf of Plaintiff Prescott and the New York Subclass)**

88.     Plaintiff Prescott realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

89.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

90.     Dos Toros has marketed the Products with the terms "naturally and humanely raised" and "100% naturally raised," when, in fact, they come from animals raised in unnatural and inhumane industrial facilities where animals have no access to the outdoors, are mistreated, and cannot express natural behaviors.

91.     Dos Toros has violated, and continues to violate, § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Dos Toros's violation of § 349, Plaintiff Prescott and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

92.     Dos Toros's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Prescott and the New York Subclass members to purchase and to pay the requested price for the Products when they otherwise would not have, or would not

have purchased as much.

93.    Dos Toros made the untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

94.    Plaintiff Prescott and the New York Subclass members have been injured by their purchase of the Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

95.    Dos Toros's advertising induced Plaintiff Prescott and the New York Subclass members to buy the Products, to buy more of them, and/or to pay the price requested.

96.    As a direct and proximate result of Dos Toros's violation of § 349, Plaintiff Prescott and other members of the New York Subclass paid for falsely advertised Products and, as such, have suffered damages in an amount to be determined at trial.

97.    By reason of the foregoing, Plaintiff Prescott and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

## COUNT II

**Violations of the New York General Business Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

98.    Plaintiff Prescott realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

99.    The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

100.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby

declared unlawful."

101.    NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

102.    Plaintiff Prescott and the members of the New York Subclass are consumers who purchased Dos Toros's Products in New York.

103.    As a seller of goods to the consuming public, Dos Toros is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

104.    Dos Toros's representations (made by statement, word, design, device, sound, or any combination thereof), and also the extent to which Dos Toros's advertising has failed to reveal material facts with respect to its Products, as described above, have constituted false advertising in violation of § 350.

105.    Dos Toros's false advertising was knowing and intentional.

106.    Dos Toros's actions led to direct, foreseeable, and proximate injury to Plaintiff Prescott and the members of the New York Subclass.

107.    As a consequence of Dos Toros's deceptive marketing scheme, Plaintiff Prescott and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, would not have paid the requested price for the Products, and/or would have purchased less of the Products; moreover, as a result of Dos Toros's conduct, Plaintiff Prescott and the other members of the New York Subclass received products of less value than what they paid for.

108.    By reason of the foregoing, Plaintiff Prescott and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 350-e(3).

## COUNT III

### Violation of State Consumer Protection Statutes
### (on Behalf of Plaintiff Prescott and All Class Members)

109.    Plaintiff Prescott realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

110.    Dos Toros's unfair, false, misleading, and fraudulent practices in marketing the Products, as alleged herein, violate each of the following state consumer protection statutes to the extent that Dos Toros's Products have been marketed, and purchased by Class members, in the respective state: 815 Ill. Comp. Stat. Ann. § 505/2; N.J. Stat. Ann. § 56:8-2; and N.Y. Gen. Bus. Law §§ 349, 350.

111.    On July 7, 2021, letters were sent to Dos Toros via certified mail that provided notice of Dos Toros's violations of state consumer protection statutes[13] and demanded that within thirty (30) days from those dates, Dos Toros correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letters also stated that if Dos Toros refused to do so, a complaint seeking damages would be filed. Defendants received the letters on July 14, July 15, and July 21, 2021, but they have failed to comply with the letters. Additional notice was provided by letter dated March 14, 2022, to which no response has been received. Accordingly, Plaintiff Prescott, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.

112.    Defendants violated these statutes by falsely and deceptively marketing the Products as "naturally and humanely raised" and "100% naturally raised."

---

[13] These letters further provided notice regarding Defendants' breach of express warranty under the common law of the states where the Products are sold.

113.    Defendants' deceptive marketing was material to Plaintiff Prescott's and Class members' decisions to purchase the Products, to purchase as much of them as they did, and to pay the requested price.

114.    Defendants acted willfully, wantonly, and with reckless disregard for the truth.

115.    Plaintiff Prescott and the Class members have been injured in that they purchased the Products, paid the requested price, and received less than what they bargained and/or paid for.

116.    By reason of the foregoing, Plaintiff Prescott and Class members are entitled to the following:

    (a) actual damages and/or statutory damages; punitive damages; and reasonable attorneys' fees under NYGBL § 349(h);

    (b) actual damages and/or statutory damages; punitive damages; and reasonable attorneys' fees under NYGBL § 350-e(3);

    (c) actual damages; punitive damages; and reasonable attorneys' fees under 815 Ill. Comp. Stat. Ann. § 505/10a; and

    (d) treble damages and reasonable attorneys' fees under N.J. Stat. Ann. § 56:8-19.

## COUNT IV

**Breach of Express Warranty**
**(on Behalf of Plaintiff Prescott and All Class Members)**

117.    Plaintiff Prescott realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

118.    Defendants provided Plaintiff and other members of the Class with written, express warranties that the Products were "naturally and humanely raised" and "100% naturally raised."

119.    These affirmations of fact or promises by Dos Toros relate to the goods and became

part of the basis of the bargain.

120.    Plaintiff Prescott and members of the Class purchased Dos Toros's Products believing them to conform to the express warranties.

121.    Dos Toros breached these warranties, resulting in damages to Plaintiff Prescott and other members of the Class, who bought Dos Toros's Products but did not receive the goods as warranted.

122.    As a proximate result of the breach of warranties by Dos Toros, Plaintiff Prescott and the other members of the Class did not receive goods as warranted. Moreover, had Plaintiff Prescott and the Class members known the true facts, they would not have purchased Dos Toros's Products, or would have purchased Dos Toros's Products on different terms, or would have purchased fewer of Dos Toros's Products.

123.    Notice of these breaches of warranty was provided to Defendants as described in ¶ 111, *supra*, which is incorporated here by reference as if fully set forth herein.

124.    Plaintiff Prescott and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Prescott respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.    An order certifying the proposed Class and Subclass; appointing Plaintiff Prescott as representative of the Class and Subclass; and appointing Plaintiff Prescott's undersigned counsel as class counsel for the Class and Subclass;

B.    An order declaring that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.      An order declaring that Defendants' conduct violates the statutes referenced herein;

D.      An order awarding monetary damages, including actual damages, statutory damages, and punitive damages, in the maximum amount provided by law under NYGBL §§ 349(h), 350-e(3); 815 Ill. Comp. Stat. Ann. § 505/10a; and N.J. Stat. Ann. § 56:8-19;

E.      An order awarding compensation for breach of warranty;

F.      An order awarding Plaintiff Prescott and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

G.      Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

125.    Plaintiff Prescott hereby demands a trial by jury.

**RICHMAN LAW & POLICY**

_____
Kim E. Richman
Jay Shooster
1 Bridge Street, Suite 83
Irvington, NY 10533
(718) 705-4579 (phone)
(718) 228-8522 (fax)
krichman@richmanlawpolicy.com
jshooster@richmanlawpolicy.com

*Counsel for Plaintiff Prescott and Proposed Class*